UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
HERBERT MORALES,

                Petitioner,

    -against-

CHARLES GREINER, Superintendent,
Sing Sing Correctional Facility,

                Respondent.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**
No. CV-98-6284 (FB)

*Appearances:*
*For the Petitioner:*
HERBERT MORALES, *Pro Se*
#85-B-0706
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, NY 12589

*For the Respondent:*
THOMAS J. SPOTA, JR., ESQ.
District Attorney, Suffolk County
    By: MICHAEL BLAKEY, ESQ.
Criminal Courts Building
200 Center Drive
Riverhead, NY 11901

**BLOCK, District Judge:**

       *Pro se* petitioner Herbert Morales ("Morales") seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 following his 1985 conviction in the New York Supreme Court, Suffolk County, for murder and attempted robbery. Thirteen years after his conviction, Morales filed this *habeas* petition on October 13, 1998,[1] raising the following claims: (1) the

---

[1] It is unclear whether Morales's petition was filed in a timely manner. Although the statute of limitations for a state prisoner to file a *habeas* petition is generally one year from the date on which his judgment becomes final, subject to certain exceptions, *see* 28 U.S.C. § 2244(d)(1)(A), Morales had a grace period of one year, until April 24, 1997, to file his habeas application because his conviction became final before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), April 24, 1996. *See Rose v. Artuz*, 150 F.3d 97, 103 (2d Cir. 1998). Additionally, the limitations period in regard to Morales's conviction may have been tolled while "properly filed

1

admission of incriminating statements made by Morales violated his Fifth Amendment privilege against self-incrimination, (2) a witness committed perjury, (3) the prosecutor failed to disclose impeachment material, (4) the prosecutor failed to disclose a crime-scene videotape in accordance with New York's disclosure law, and (5) he was denied effective assistance of trial counsel. For the reasons set forth below, his petition is denied.

## I.

It is well settled that "federal habeas relief is not available unless 'the applicant has exhausted the remedies available in the courts of the State.'" *Jones v. Keane*, 329 F.3d 290, 294 (2d Cir. 2003) (quoting 28 U.S.C. § 2254(b)(1)(A)). Morales's first claim has two components, which relate to statements he made to the police before and after he received notice of his *Miranda* rights. With respect to his pre-*Miranda* statement, his claim was presented to and rejected by the Appellate Division, Second Department on direct appeal, *see People v. Morales*, 133 A.D.2d 281 (2d Dep't 1987), and was fully exhausted when the New York Court of Appeals affirmed the Appellate Division. *See* Resp't's Aff. at 17 ("Leave to appeal to the New York State Court of Appeals was denied on October 19, 1987."). Although neither party raises the issue, it does not appear that he has exhausted

---

application[s] for State post-conviction or other collateral review with respect to the pertinent judgment or claim [were] pending." 28 U.S.C. § 2244(d)(2). Nonetheless, the Court need not determine whether the petition was timely filed because the respondent did not raise this issue. *See Acosta v. Artuz*, 221 F.3d 117, 122 (2d Cir. 2000) ("The AEDPA statute of limitation is not jurisdictional and nothing in AEDPA or in the 2254 Habeas Rules indicates that the burden of pleading the statute of limitation has been shifted from the respondent to the petitioner. The AEDPA statute of limitation is therefore an affirmative defense and compliance therewith need not be pleaded in the petition.").

his claim regarding his post-*Miranda* statements; nonetheless, the Court may deny it on its merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of *habeas corpus* may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Pratt v. Greiner*, 306 F.3d 1190, 1197 (2d Cir. 2002) ("A district court also may . . . deny a petition on the merits even if it contains an unexhausted claim.").

Morales raised his second claim in a New York Criminal Procedure Law § 440.10 motion, which was rejected by the County Court of Suffolk County, *see People v. Morales*, No. 251-84 (County Ct. June 20, 1988), and was fully exhausted when the Appellate Division denied leave to appeal. *See* Resp't's Aff. at 18 ("On August 1, 1990, Associate Justice Stanley Harwood of the Appellate Division denied leave.").[2] He raised his third claim in a second 440.10 motion, which was also rejected by the County Court of Suffolk County, *see People v. Morales*, No. 251-84 (County Ct. Apr. 4, 1989). Although neither party raises the issue, it is unclear whether Morales appealed, and hence whether he exhausted this claim. His fourth claim was raised in a third 440.10 motion, which was also rejected by the County Court of Suffolk County, *see People v. Morales*, No. 251-84 (County Ct. Feb. 13, 1998), and was fully exhausted when the Appellate Division denied leave to appeal. *See* Resp't's Aff. at 19 ("On April 10, 1998, Associate Justice Gloria Goldstein of the Appellate Division denied leave to appeal from the February 13 order."). His fifth claim was raised in a fourth 440.10 motion, which was again rejected by the County Court of

---

[2] A claim is fully exhausted once the Appellate Division has denied leave to appeal the denial of a § 440.10 motion because further leave to the Court of Appeals is not available. *See* N.Y. Rules of Court, Court of Appeals, § 500.10(a).

3

Suffolk County, *see People v. Morales,* No. 251-84 (County Ct. Mar. 19, 2004), and was fully exhausted when the Appellate Division denied leave to appeal. *See People v. Morales,* No. 251-84 (2d Dep't May 20, 2004).

## II.

Only federal issues may be raised on *habeas* review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 68 (1991). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a federal claim has been "adjudicated on the merits" by a state court, the state court's judgement is entitled to substantial deference. *See* 28 U.S.C. § 2254(d). "[A] state court adjudicates a state prisoner's federal claim on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir. 2001) (citations and quotations omitted).

For claims "adjudicated on the merits," *habeas* relief may not be granted unless the state court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different conclusion. *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000). A state court decision involves an "unreasonable application" of clearly established federal law if it unreasonably applies Supreme Court precedent to the

4

particular facts of a case. *See id.* at 409. This inquiry requires a court to "ask whether the state court's application of clearly established federal law was objectively unreasonable," not whether the application was erroneous or incorrect. *Id.* In that respect, the standard to be applied "falls somewhere between merely erroneous and unreasonable to all reasonable jurists." *Wade v. Mantello*, 333 F.3d 51, 57 (2d Cir. 2003) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)). However, the "increment [of incorrectness beyond error] need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Eze v. Senkowski*, 321 F.3d 110, 125 (2d Cir. 2003) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

A state court determination of a factual issue is presumed to be correct. 28 U.S.C. § 2254(e)(1). The determination is unreasonable only where the petitioner meets his or her burden of "rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see also Francis S.*, 221 F.3d at 114.

### III.

### A. Incriminating Statements

Morales's argument that the trial court erroneously admitted incriminating statements made by Morales is predicated on the following facts. On February 6, 1984, Morales's mother thrice contacted Joseph Villanti ("Villanti"), a police officer who was an acquaintance of hers, in regard to her son's possible involvement in the murder of Paul Costallos ("Costallos") during an attempted robbery of a gas station; on her third contact, she informed Villanti that her son intended to surrender himself. At her request, Villanti and Morales's mother drove in his personal vehicle to a subway station to pick up Morales.

5

During the return car ride, Morales's mother asked Morales about his involvement in the robbery and murder; in response, Morales admitted that he was involved and explained that the gun had discharged when Castallos reached for it. Villanti never administered *Miranda* warnings and "purposefully" remained silent throughout the return car ride because he "was not going to talk to him [in] reference to the case." Tr. at 28.[3] Thereafter, upon arriving at the police station, another police officer placed Morales under arrest and read him his *Miranda* rights; Morales agreed to waive his rights. Initially, he reiterated that he was involved and that Castallos reached for the gun, but now claimed that an accomplice, Robert Gallino ("Gallino"), panicked and shot Castallos. Morles admitted, however, that the gun that was used belonged to him. Eventually, he admitted that he – not Gallino – had shot Castallos. The trial court allowed both the pre-*Miranda* and post-*Miranda* statements to be placed in evidence. The Appellate Division held that "the introduction at trial of [the] incriminating statements . . . does not mandate reversal of his conviction." *Morales*, 133 A.D.2d at 282.

### 1. The Pre-Miranda Statement

Morales argues that his statement to Villanti was admitted in violation of his *Miranda* rights because it was the product of custodial police interrogation that was not preceded by notification of those rights. Under *Miranda v. Arizona*, 384 U.S. 436 (1966), custodial interrogations are prohibited without prior warning of the Fifth Amendment privilege against self-incrimination. The Supreme Court has defined the term

---

[3] Tr. refers to the transcript of the pre-trial hearing on October 10, 1984.

6

"interrogation" to include both "express questioning" and "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 292, 301 (1980). "The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Id.* In *Arizona v. Mauro*, 481 US 520 (1987), the Supreme Court held that the mere presence of an officer did not constitute interrogation when the officer expressly permitted a defendant's wife to speak with her husband who was accused of murdering their son, but the officer insisted upon remaining present during the conversation. The Supreme Court explained that the officer asked "no questions about the crime or his conduct[,]" and the officer's decision "to allow [his] wife to see him was [not] the kind of psychological ploy that properly could be treated as the functional equivalent of interrogation." 481 U.S. at 527. In light of *Mauro*, it may well be that Villanti's presence in the vehicle did not constitute interrogation.

The Appellate Division did not, however, reach this issue, holding instead that even if the statement was erroneously admitted, such error was harmless because its admission

> could not have contributed to defendant's conviction in view of the facts that the defendant had admitted to several witnesses that he had purposefully shot the victim, that at least five witnesses testified that the defendant had informed them of his plans and intent to commit the robbery, and that he had previously displayed to some of these witnesses certain objects which were later found at the scene of the crime, and, finally, in view of the defendant's highly damaging subsequent confession, which was properly admitted at trial. In this

7

>regard, we note, moreover, that the People also adduced ample circumstantial evidence linking the defendant to the crimes for which he now stands convicted. This evidence included footprints, found at the scene of the crime, which matched the soles of the defendant's sneakers; fibers, retrieved from the crime scene, which were identical to fibers discovered in the vehicle utilized during the crime; tire tracks matching the tires of this vehicle; chemically analyzed urine samples which were consistent with the defendant's blood type; and expended shot pellets recovered during the autopsy of the victim which proved to be identical to those in ammunition later seized from the codefendant's home. Accordingly, it cannot fairly be said that the introduction of the subject statement had any real bearing on the jury's verdict, considering the independent and overwhelming proof of guilt adduced by the prosecution.

*Morales*, 133 A.D.2d at 282.

As the Second Circuit has explained, "[w]here a confession has been erroneously admitted in violation of the defendant's *Miranda* rights, this constitutional error is subject to a harmless error analysis." *Zappulla v. People of New York*, 391 F.3d 462, 466 (2d Cir. 2004) (citing *Arizona v. Fulimante*, 499 U.S. 279, 310 (1991) (concluding that the admission of an involuntary confession at trial is subject to harmless error analysis); other citation omitted). On *habeas* review, a district court may "only . . . reverse [state courts' harmless error] determinations that are objectively unreasonable" and "[t]he pertinent state court determination is whether the [prosecution] proved beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 467. The circuit court in *Zappulla*, "distilling" Supreme Court precedent, "conclude[d] that the Supreme Court has found the following factors to be relevant in determining whether the erroneous admission of a confession was harmless error: (1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the

importance of the wrongly admitted testimony; and (4) whether such evidence was cumulative of other properly admitted evidence." *Id.* at 468. Based upon its review of the record, the Court cannot conclude that the state court's harmless error determination was either an unreasonable application of clearly established Supreme Court precedent or based on an unreasonable determination of the facts in light of the evidence. Thus, Morales's claim with respect to his pre-*Miranda* statement is denied.

## 2. The Post-Miranda Statements

With respect to the post-*Miranda* statements, Morales claims that they should have been "suppressed as the byproduct of an initial coerced confession" under *Oregon v. Elstad*, 470 U.S. 298 (1985). Mem. Supp. Pet. at 36. Based upon the Court's review of the record, it does not appear that this claim was presented to the Appellate Division. Instead, Morales's argument to the Appellate Division regarding his post-*Miranda* statements was "that any purported waiver [of his constitutional rights] should have no legal force or effect because it was made without presence of counsel although he was being represented by an attorney on pending unrelated charges." *Morales*, 133 A.D.2d at 283. The Appellate Division rejected that argument because the police inquired as to the status of the pending unrelated charge, Morales responded that he had already pleaded guilty to that charge and was not represented by counsel with respect to that or any other charge, and thus it was "entirely reasonable and lawful for the police to proceed with questioning in light of defendant's representations[,]" *id.*, a conclusion Morales does not challenge in his *habeas* petition.

As noted, notwithstanding his apparent failure to exhaust state remedies for

his claim that his post-*Miranda* statements should have been suppressed as the byproduct of an initial coerced confession, the Court may nonetheless deny that claim on the merits. *See* 28 U.S.C. § 2254(b)(2). If the Court were to stay Morales's petition to allow him an opportunity to exhaust this claim in state court, it would afford AEDPA deference to the state court's adjudication on the merits. Because the Court exercises its discretion under 28 U.S.C. § 2254(b)(2) to deny the claim on the merits rather than stay for exhaustion, and because there has, therefore, been no state court adjudication on the merits, it will consider the claim *de novo*. *See DeBerry v. Portuondo*, 403 F.3d 57, 68 (2d Cir. 2005) ("[W]e will review de novo if there was no adjudication on the merits.").

Even if Morales's pre-*Miranda* statement is deemed to have been taken in violation of *Miranda*, under the reasoning of *Elstad* it does not follow that his post-*Miranda* statement should have been suppressed. In *Elstad*, the Supreme Court held that "absent deliberately coercive or improper tactics in obtaining the initial statement, . . . [a] subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." 470 U.S. at 314. In *Missouri v. Seibert*, 124 S.Ct. 2601, 2612 (2004), the Supreme Court emphasized that *Elstad* "took care to mention that the officer's initial failure to warn was an 'oversight' that 'may have been the result of confusion as to whether the brief exchange qualified as 'custodial interrogation' or may simply have reflected . . . reluctance to initiate an alarming police procedure before [an officer] had spoken with the [defendant's] mother[,]'" and noted that "although [*Elstad*] expressed no explicit conclusion about either officer's state of mind, it is fair to read *Elstad*

10

as treating the [pre-warning] conversation as a good-faith *Miranda* mistake, not only open to correction by careful warnings before systematic questioning . . . , but posing no threat to warn-first practice generally[.]" Based on its review of the record, the Court concludes that Villanti made a good-faith mistake based on confusion as to whether his conduct constituted interrogation, which mistake was corrected by the *Miranda* warning given to Morales. In any event, as with the admission of his pre-*Miranda* statement, even if the post-*Miranda* statement should have been suppressed, its admission was harmless error given the overwhelming evidence of Morales's guilt.

**B. Perjury**

Morales next argues that he was deprived of due process because Ira Dubey ("Dubey"), a witness who testified as an expert for the prosecution, committed perjury in regard to his testimony about his academic credentials; he secondarily argues that the trial court reporter failed to accurately reflect Dubey's testimony about his credentials, which amounted to a due process violation. His perjury claim was precipitated by an article published in a local newspaper about how Dubey had inflated his credentials during sworn testimony; specifically, the article revealed that Dubey had studied for but not completed the requirements to obtain a Masters degree.

On Morales's first 440.10 motion, the state court held a hearing but ultimately found no merit to Morales's claim. It noted that according to the trial transcript Dubey had correctly testified that he had "*attended* the City University of New York for a Master's Degree in forensics science[,]" but it acknowledged that the transcript did not necessarily "accurately reflect" Dubey's trial testimony because Dubey had testified in such a "rapid

11

manner" about his credentials and the court reporter may not have completely captured his testimony. *Morales*, No. 251-84, at 9-10 (Suffolk Cty. Ct. June 20, 1988). Nonetheless, the state court found that the prosecutor had not known at the time of trial about any discrepancies in Dubey's credentials and that "the result of the proceeding would not have been any different" even if the jury entirely discredited Dubey's testimony. *Id.* at 15.

Perjury is established by showing that a witness "knowingly and willingly" gave "materially false" testimony. *See* 18 U.S.C. § 1001(a)(2); *see also United States v. Salameh*, 54 F. Supp. 2d 236, 261-62 (S.D.N.Y. 1999). Once perjury is established, if the government "knew or should have known about the perjury, the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Gallego*, 191 F.3d 156, 161-62 (2d Cir. 1999) (internal quotation omitted). However, if the government is unaware of the witness's perjury, a federal *habeas* petitioner must show that the perjured testimony was material and "the court is left with a firm belief that *but for* the perjured testimony, [he] would most likely not have been convicted." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 816 (2d Cir. 2001) (emphasis added).

The state court's finding that the prosecutor was not aware of Dubey's perjury is presumed to be correct and Morales has not offered any evidence to rebut this presumption. Thus, based on the its review of the record, the Court cannot conclude that the state court's determination that "the result of the proceeding would not have been any different" even if the jury entirely discredited Dubey's testimony was either an unreasonable application of clearly established Supreme Court precedent or based on an

unreasonable determination of the facts in light of the evidence.

## C. Impeachment Material

Morales's third argument is that the prosecutor knowingly and deliberately withheld impeachment material concerning another prosecution witness, Parmad Dhwan ("Dhwan"), who testified in regard to the chain of custody of certain evidence; Morales contends that the prosecution was "aware eight ... months prior to [his] trial that [Dhwan] was discharged from another jurisdiction for falsifying official records, and that all tests conducted by this technician needed to be reexamined." Morales Pet. at 6a. As noted, although Morales presented this claim in his second 440.10 motion, it is unclear from the record whether he exhausted it by appealing the denial of that motion. If Morales indeed failed to appeal, the claim would likely be precluded from further consideration in the New York courts, see N.Y. C.P.L. § 460.10(4)(a) (30-day limitations period for appeal from denial of 440.10 motion), and therefore he could not litigate its merits in a federal *habeas* proceeding "absent a showing of cause for the procedural default and prejudice resulting therefrom." *Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991). Nonetheless, the Court need not resolve the question of whether the claim is unexhausted but procedurally barred because it is without merit.[4] *See, e.g., Diaz v. Mantello*, 115 F. Supp. 2d 411, 416 n. 3 (S.D.N.Y. 1999) ("the Court need not resolve the issue of whether petitioner could return to state court to

---

[4] Unlike Morales's claim regarding his post-*Miranda* statement, which the Court reviewed *de novo* because it was not presented to the state courts, his claim regarding impeachment material was previously adjudicated on the merits in a state court proceeding; therefore, the Court affords AEDPA deference to the state court's determination. *See Castillo v. Hodges*, 2004 WL 613075, *5-*7 (S.D.N.Y. Mar. 29, 2004) (applying AEDPA deference in reviewing merits of 440.10 court's decision that was unexhausted due to failure to appeal and arguably procedurally barred).

13

raise his unexhausted claim . . . or whether this claim is instead procedurally forfeited. Instead [it will] proceed to consider this claim on the merits, in order to dismiss the action.").

On Morales's second 440.10 motion, the state court ruled that "the prosecution had no information which impacted adversely upon Dhwan's credibility as far as his limited role in the collection of evidence leading to the prosecution of the defendant" and that any error would have been harmless in light of the "overwhelming[ ]" amount of evidence against Morales. *Morales*, No. 251-84 (County Ct. Apr. 4, 1989).

The prosecution is under an obligation to disclose evidence that is favorable to the accused. *See Brady v. Maryland*, 373 U.S. 84, 87 (1963). That obligation encompasses not only exculpatory information, but includes impeachment evidence as well. *See Giglio v. United States*, 405 U.S. 150, 154 (1972); *see also United States v. Begley*, 473 U.S. 667, 676 (1985) ("Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule."); *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998)(same). The prosecution's obligation to produce such evidence, however, applies only to information which is "material." *Id.*; *United States v. Schwarz*, 259 F.3d 59, 64 (2d Cir. 2001) (per curiam). "In order for the evidence to be 'material' within the meaning of *Brady*, a defendant does not need to show that the evidence, if disclosed, would have resulted in his acquittal; rather, he needs to show only that the evidence 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995)). A new trial is required only if the impeaching evidence "could . . . in any reasonable likelihood have affected the judgment of the jury[.]"

*Giglio*, 405 U.S. at 154 (quoting *Napue v. Illinois*, 360 U.S. 264, 271 (1959).

The state court's finding that the prosecutor was not aware of this impeachment material is presumed to be correct, and Morales has not offered clear and convincing evidence to rebut this presumption; moreover, in light of the overwhelming evidence against Morales, this impeachment material could not have reasonably been taken "to put the whole case in such a different light as to undermine confidence in the verdict." Thus, based on the its review of the record, the Court concludes that the state court's determination was neither an unreasonable application of clearly established Supreme Court precedent nor based on an unreasonable determination of the facts in light of the evidence.

**D. Crime-Scene Videotape**

Morales also argues that he was denied due process because the prosecutor failed to disclose, as required by *People v. Rosario*, 9 N.Y.2d 286 (1961) (prosecutors must disclose any recorded statement made by a person whom the prosecutor intends to call as a witness which relates to the subject matter of the witness's testimony), a videotape of law enforcement's response to the crime scene; the prosecutor, however, disputes that this videotape even existed. Morale's claim is based on a confidential memorandum that he obtained which indicated that a law enforcement official had been making videotapes of some murder crime scenes.

On Morale's third 440.10 motion, the state court denied this claim because even assuming *arguendo* that the videotape did exist, Morales did not suffer any prejudice by the failure to disclose it. *See Morales*, No. 251-84, at 2 (County Ct. Apr. 4, 1989).

Although only federal issues may be raised on *habeas* review, an issue of state law is cognizable on *habeas* review where either a misapplication of state law or the state law itself violates a federal right. *See, e.g., Ponnapula v. Spitzer*, 297 F.3d 172, 187 (2d Cir. 2002) ("[A] federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States."); *Rock v. Arkansas*, 483 U.S. 44 (1987) (*habeas* granted where state rule violated a federal right). It is undisputed that *Rosario* itself is constitutional; at issue is only whether it was erroneously applied in a manner that violated a federal right.

It is well established that "[t]here is no general constitutional right to discovery in a criminal case[.]" *Gray v. Netherland*, 518 U.S. 152, 168 (1996) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)). "Rather, the Constitution requires, per the due process clause, only that the defendant not be deprived of a fundamentally fair trial." *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002) (citing *Weatherford*, 429 U.S. at 559). A defendant may be deprived of a fair trial "if the nondisclosure . . . was error and was substantially prejudicial." *United States v. Yousef*, 327 F.3d 56, 168 (2d Cir. 2003).

Based on the its review of the record, the Court concludes that the state court's determination that Morales was not prejudiced was neither an unreasonable application of clearly established Supreme Court precedent nor based on an unreasonable determination of the facts in light of the evidence. Thus, Morales's claim is denied.

E. Ineffective Assistance of Counsel

Morales finally argues that he was deprived of effective assistance of trial counsel because his counsel gave him incorrect information regarding the prosecution's

plea offer. On Morale's fourth 440.10 motion, the state court held that his claim was procedurally barred by New York Criminal Procedure Law § 440.10(3)(c) because it could have been raised in Morales's prior 440.10 motions.[5]

"Federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground[,]" *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990), "unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted).

"Courts in this Circuit have routinely held that a New York court's reliance on . . . § 440.10(3)(c) constitutes an adequate and independent state ground that precludes federal habeas review." *See Jones v. Spitzer*, 2003 WL 1563780, at *51 (S.D.N.Y. Mar. 26, 2003) (citations omitted). The Court concludes that Morales's ineffective assistance claim was procedurally barred on independent and adequate state grounds, and Morales cannot show cause for the default or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice.

---

[5] New York Criminal Procedure Law § 440.10(3)(c) provides that "the court may deny a motion to vacate a judgment when . . . [u]pon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so. Although the court may deny the motion under any of the circumstances specified in this subdivision, in the interest of justice and for good cause shown it may in its discretion grant the motion if it is otherwise meritorious and vacate the judgment."

17

## CONCLUSION

The petition is denied. A certificate of appealability will not issue because Morales has failed to make a substantial showing of the denial of a federal right. *See* 28 U.S.C. § 2253.

**SO ORDERED.**

Signed /

FREDERIC BLOCK<br>
United States District Judge

Brooklyn, New York<br>
May 2, 2005